UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| CHOI HALLADAY, o/b/o A.H., a minor child, | ) ) ) | No. CV-08-261-JPH |
| Plaintiff, | ) ) ) | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (**Ct. Rec. 15**) |
| v. | ) ) | |
| WENATCHEE SCHOOL DISTRICT, a municipal corporation, and PATTY EGGLESTON, individually. Defendants. | ) ) ) ) | |

On February 13, 2009, the Court heard oral argument on defendants' motion for summary judgment (Ct. Rec. 15) set for oral argument at defendants' request. (Ct. Rec. 20, 29.) Plaintiff filed a response in opposition on December 30, 2008. (Ct. Rec. 22.) On January 6, 2009, defendants filed a reply. (Ct. Rec. 28.) Alex Stanley Fox appeared on behalf of plaintiff. Jerry Moberg appeared on behalf of defendants. The parties consented to have the matter decided by a Magistrate Judge. (Ct. Rec. 11.)

The matter was removed from Chelan County superior court to federal court in August of 2008. (Ct. Rec. 1.) Plaintiff alleges violations of his procedural and substantive due process rights under 42 U.S.C. § 1983 and negligence arising from a school disciplinary action that took place in December of 2005 when plaintiff was a fifth grade student. (Ct. Rec. 25 at 1-2, 8.)

1  I.  <u>Background</u>

2       [Except as noted, the facts are taken from plaintiff's

3  memorandum at Ct. Rec. 25.] On December 6, 2005, the events giving

4  rise to this action took place during lunch recess at Newbery

5  Elementary school in the Wenatchee school district. (Ct. Recs. 1

6  at 1-3; 25 at 1-2.)  Defendant concedes for the sake of argument

7  that other students either threw or rubbed snowballs in

8  plaintiff's face.  (Ct. Rec. 28 at 3.)  Plaintiff, AH, responded

9  by chasing and saying "I'll kill you" to the student plaintiff

10 apparently perceived as the main culprit, AL.  (Ct. Rec. 25 at 2.)

11 There were adult recess monitors in the area at the time.  (Ct.

12 Rec. 17 at 2.)

13      AH and AL returned their classroom shortly thereafter as

14 recess ended.  (Ct. Recs. 17 at 2; 25 at 2.)  Upon returning to

15 class, AL reported to their teacher, Dellamy Thomas, that AH had

16 chased him around the playground and threatened to kill him.  (Ct.

17 Recs. 17 at 3, 25 at 2.)  When asked which adult outside AL

18 reported this to, he said he did not report it because it was only

19 three minutes until the bell and he decided to wait until

20 returning to the classroom.  (Ct. Rec. 17 at 3.)  Ms. Thomas had

21 the boys explain what happened.  (Ct. Recs. 17 at 3, 25 at 2.)

22      The next morning, December 7, 2005, Ms. Thomas told the

23 principal, Patty Eggleston, what happened.  (Ct. Rec. 25 at 3.)

24 Ms. Eggleston had SRO Paul Hughes interview AH.  (Ct. Rec. 25 at

25 3-4.)  The principal emergency expelled plaintiff.  (Ct. Rec. 25

26 at 4.)  An hour or two later the principal reduced the emergency

27 expulsion to a one day suspension for the rest of the school day.

28 (Ct. Rec. 25 at 6.)  Plaintiff was sent home with his parents the

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 2

same day, December 7, 2005. (Ct. Rec. 21 at 39.)  AH missed a
total of between 4 and 5 hours of school.  (Ct. Rec. 21 at 66-67.)
Also on December 7, 2005, plaintiff's parents were notified of
their right to appeal the emergency expulsion and the one day
suspension, and of AH's ability to return to school on December 8,
2005.  (Ct. Rec. 21 at 40, 42-44.)  The parents did not send
plaintiff back to school on December 8, 2005; instead, they
transferred him to another school.  (Ct. Rec. 25 at 7-8.)
Plaintiff filed suit against the principal and the school district
alleging that the district's handling of the emergency expulsion
reduced to a one-day suspension violated his due process rights.
(Ct. Recs. 1, 25 at 8.) He also alleges the district was negligent
in failing to protect him from bullying and/or harassment, and the
bullying or harassment caused him to verbally threaten to kill
another student, the threat which resulted in plaintiff's
suspension. (Ct. Rec. 25 at 8, 13-20.)

II.   Claims

On December 9, 2008, defendants filed a motion for summary
judgment seeking dismissal of all claims.  (Ct. Rec. 15).
Plaintiff alleges that his rights to procedural and substantive
due process were violated by the district when he was disciplined
(the 1983 claims), and that he was harmed by the district's
negligent failure to adequately supervise the students at recess
(negligence claim).

III. Legal Standard

Summary judgment is appropriate when it is demonstrated that
there exists no genuine issue as to any material fact, and that
the moving party is entitled to judgment as a matter of law.  Fed.

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 3

R. Civ. P. 56(c).  Under summary judgment practice, the moving
party

> [A]lways bears the initial responsibility of informing
> the district court of the basis for its motion, and
> identifying those portions of "the pleadings, depositions,
> answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material
> fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the
nonmoving party will bear the burden of proof at trial on a
dispositive issue, a summary judgment motion may properly be made
in reliance solely on the 'pleadings, depositions, answers to
interrogatories, and admissions on file.'"  *Id.*  Indeed, summary
judgment should be entered, after adequate time for discovery and
upon motion, against a party who fails to make a showing
sufficient to establish the existence of an element essential to
that party's case, and on which that party will bear the burden of
proof at trial.  *Celotex Corp.*, 477 U.S. at 322.  "[A] complete
failure of proof concerning an essential element of the nonmoving
party's case necessarily renders all other facts immaterial."  *Id.*
In such a circumstance, summary judgment should be granted, "so
long as whatever is before the district court demonstrates that
the standard for entry of summary judgment, as set forth in Rule
56(c), is satisfied."  *Id.* at 323.

If the moving party meets its initial responsibility, the
burden then shifts to the opposing party to establish that a
genuine issue as to any material fact actually does exist.
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
586 (1986).  In attempting to establish the existence of this
factual dispute, the opposing party may not rely upon the denials

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 4

of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n. 11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 5

drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

IV. <u>Discussion</u>

Plaintiff alleges violations of procedural and substantive due process and negligence.

A. <u>Procedural due process</u>

Plaintiff argues the school district violated his procedural right to due process by failing to provide him with notice of his behavioral infraction (the verbal threat he made to kill another student) and an opportunity to be heard on the infraction before the principal emergency expelled him. (Ct. Rec. 25 at 9-13.) Specifically, plaintiff claims principal Eggleston erred "because she administered discipline before investigating;" that is, emergency expelled plaintiff before investigating. (Ct. Rec. 25 at 11.) Plaintiff acknowledges that there are exceptions to a student's right to notice and an opportunity to be heard, specifically, when a student poses a continuing danger to persons

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 6

or property or an ongoing threat of disrupting the academic process. (Ct. Rec. 25 at 11-12, citing *Goss v. Lopez*, 419 U.S. 565, 582 (1975.) Plaintiff admits that in such cases, the necessary notice and "at least rudimentary hearing should follow as soon as practicable." (*Id.*, citing *Goss*, 419 U.S. at 582-583.)

Plaintiff posits that because both boys involved in the incident were interviewed by their teacher, Dellamy Thomas, shortly after the incident and she handled the situation and thought it was resolved, plaintiff was deprived of his right to notice and an opportunity to be heard when the principal and student resource officer (SRO) Hughes interviewed him the next morning. [It is undisputed that the principal was ill and not at school on the day of the incident but was present at school the next day.] (Ct. Rec. 25 at 12.) Plaintiff argues that by the time of the interviews the next day, he was "clearly not a continuing danger to persons or property, or an ongoing disruption to the academic process;" yet the principal emergency expelled him and then immediately determined he was not a threat or disruptive. (Ct. Rec. 25, citing Exhibit D, Eggleston deposition at 45.) Plaintiff argues Eggleston agreed that an in-school suspension could have been administered instead of the expulsion, allowing her to review the evidence she had already been given. (Ct. Rec. 25 at 15-16, citing Eggleston deposition at 73-74.)

Defendant counters that the student was given notice of his infraction and an opportunity to be heard: initially by his teacher, and the following day by the principal and SRO Hughes. (Ct. Rec. 28 at 3-6.)

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 7

In *Goss v. Lopez*, 419 U.S. 565, 581-582 (1975), the Court held that due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his version.  Generally, notice and hearing should precede the student's removal from school, since the hearing may almost immediately follow the misconduct, but if prior notice and hearing are not feasible, as where the student's presence endangers persons or property or threatens the disruption of the academic process, thus justifying immediate removal from school, the necessary notice and hearing should follow as soon as practicable. *Goss*, 419 U.S. at 581-582.

Defendant is correct that, to the extent plaintiff challenges the procedural due process provided by the school, his claim fails.  The facts as admitted by plaintiff reveal he was given the notice of his violation and an opportunity to be heard as required by due process for suspensions of less than ten days.  (Ct. Rec. 25 at 2-7.)

It appears plaintiff's real quarrel is with the correctness of the sanction imposed.  Plaintiff prefers that the teacher's decision (characterized as having resolved the matter after she interviewed both boys and deemed no further action was necessary) is the final word.  Despite plaintiff's unhappiness with the principal's decision, it was her decision to make.  Plaintiff does not point to any facts showing a procedural due process violation. On this record, no violation of plaintiff's right to procedural due process is established.

B. Substantive due process

In his response to defendants' motion for summary judgment (Ct. Rec. 25), plaintiff conflates his procedural and substantive due process arguments. (Ct. Rec. 25 at 9-13.) Plaintiff cites no facts or authority in support of the claimed violation of his substantive right to due process. Understandably, plaintiff withdrew this claim at oral argument. Accordingly, the Court need not address this claim as plaintiff has withdrawn it.

C. Negligence

Plaintiff alleges defendants negligently failed to properly supervise the students at recess, which caused the snow incident which in turn caused the retaliatory verbal threat resulting in plaintiff's suspension. (Ct. Rec. 25 at 13-20.) Defendants counter no duty to plaintiff was breached, there is no causal nexus between the snow incident and plaintiff's suspension, and plaintiff is not able to establish an actual injury as a result of defendants' actions. (Ct. Rec. 28 at 5-10.)

A cause of action for negligence requires the plaintiff to show (1) that the defendant owed a duty to the plaintiff, (2) breach of that duty, (3) an injury, and (4) a proximate cause between the breach and the injury. *Travis v. Bohannon*, 128 Wn. App. 231, 237 (2005), citing *Tincani v. Inland Empire Zoological Soc'y*, 124 Wn. 2d 121, 127-128 (1994).

Duty. The threshold determination of whether a defendant owes a duty to a plaintiff is a question of law. *Travis*, 128 Wn. App. at 237-238, citing *Hutchins v. 1001 Fourth Avenue Assocs.*, 116 Wn. 2d 217, 220 (1991); *Pedroza v. Bryant*, 101 Wn. 2d 226, 228 (1984).

The general rule is that schools have a duty to protect

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT – 9

students in their custody from reasonably foreseeable harm.  When a pupil attends a public school, he or she is subject to the rules and discipline of the school, and the protective custody of the teachers is substituted for that of the parent.  *Peck v. Siau*, 65 Wn. App. 285, 292 (1992), citing *McLeod v. Grant Cy. Sch. Dist. No. 128*, 42 Wn. 2d 316, 319 (1953); *Briscoe v. School Dist. No. 123*, 32 Wn. 2d 353, 362 (1949).  As a result, a duty is imposed by law on the school district to take certain precautions to protect the pupils in its custody from dangers reasonably to be anticipated.  *Peck*, 65 Wn. App. at 292 (citations omitted).

Two factors determine the scope of a school's legal duty: the student-school relationship, and the general nature of the risk. *Travis*, 128 Wn. App. at 238, citing *McLeod*, 42 Wn. 2d at 319.  The court asks whether the harm that occurred is of a sort that was within a "general field of danger" that should have been anticipated.  *See Travis*, 128 Wn. App. at 239 (citations omitted). A school district then has a duty to "exercise such care as an ordinarily reasonable and prudent person would exercise under the same or similar circumstances."  *Id.*, citing *Briscoe*, 32 Wn. 2d at 362.  The duty requires school districts to exercise reasonable care to protect students from physical hazards in the school building or on school grounds.  *Peck*, 65 Wn. App at 293 (citations omitted).

The Court concludes (and the parties concede) that AH was in the district's custody and the district owed him a duty of reasonable care.

<u>Breach</u>.  What constitutes reasonable care and whether a defendant breached its duty are generally questions of fact.

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 10

1  *Travis*, 128 Wn. 2d at 240, citing *Richland Sch. Dist. v. Mabton*
2  *Sch. Dist.*, 111 Wn. App. 377, 389 (2002); *Hertog v. City of*
3  *Seattle,* 128 Wn. 2d 265, 275 (1999).  In *Peck*, 65 Wn. App. at
4  293, the court reviewed some of the cases interpreting the
5  districts' duty to protect students on school grounds: *McLeod*, 42
6  Wn. 2d at 322-323 (unlocked dark room under bleachers available to
7  students for indecent activities); *Gattavara v. Lundin*, 166 Wash.
8  548, 554 (1932)(allowing cars to drive across school grounds
9  during school hours); *Rice v. School Dist*. 302, 140 Wash. 189
10 (1926)(live electric wire).  School districts are required to
11 exercise reasonable care to protect students from the harmful
12 actions of fellow students.  *Peck*, 65 Wn. App. at 293 (citations
13 omitted.)  However, the district is not liable merely because such
14 activities occur.  *Id.* (citations omitted.)  The district is only
15 liable if the wrongful activities are foreseeable, and they will
16 be foreseeable only if the district knew or in the exercise of
17 reasonable care should have known of the risk that resulted in
18 their occurrence.  *Id.* (citations omitted).

19     In this case, it is unrefuted that the district had an
20 adequate number of supervisors on the playground at recess.

21     <u>Injury</u>. Injury is an essential element of a negligence claim.
22 *Travis*, 128 Wn. App. at 237.  Accordingly, plaintiff must
23 demonstrate that he has suffered damages as a result of
24 defendants' conduct in order to prove his negligence claim.

25     <u>Causation</u>.  A school district is liable solely for injuries
26 of which its breach of duty is a proximate cause.  *Travis*, 128 Wn.
27 App. at 240, citing *Coates v. Tacoma Sch. Dist. No. 10*, 55 Wn. 2d
28 392, 398-399 (1960).

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 11

1    <u>Analysis</u>.

2        Essentially, plaintiff alleges the defendants had a duty to

3    supervise and protect AH from being harassed and bullied.  While

4    this general proposition is true, there are no facts on this

5    record that demonstrate defendants breached this duty.  In the

6    first place the district was not aware of any bullying incidents

7    involving AH.  The parents did not notify the school district of

8    any bullying incidents and district officials did not witness any

9    bullying incidents.  (Ct. Rec. 17 at 14.)  Further, the school had

10   proper supervisory staff on the playground that day.  Those staff

11   were not aware of the snow throwing incident which happened

12   quickly in a matter of a minute or two.  It is not reasonably

13   foreseeable that the playground supervisors would have prescient

14   knowledge of the snow throwing event causing a threat to do harm

15   and intervene to stop it before it occurred.  Further, AH was not

16   inujred.  To avoid summary judgment on the matter of negligence,

17   plaintiff would have to come forward with some evidence that the

18   district knew or reasonably should have shown that the students

19   would throw snow at AH and that AH, uninjured by that event, would

20   then threaten to kill a student, resulting in AH's emergency

21   expulsion/suspension.  While plaintiff's expert supports the

22   notion that throwing snow on the playground is foreseeable, his

23   declaration cannot and does not go further in view of the

24   unrefuted evidence that the playground supervision was adequate.

25       Additionally, on a negligence analysis, plaintiff cannot

26   overcome the lack of injury here.  Plaintiff's claimed injury is

27   the embarrassment he felt as a result of being interviewed and

28   emergency expelled (which changed to a less than 1-day suspension

before the end of the day).  He alleges "A.H.'s future could be
seriously hindered by Eggleston's expulsion."  (Ct. Rec. 25 at 6-
7, 11.)  Plaintiff sought no treatment or mental health counseling
following his suspension.  Plaintiff fails to submit any evidence
of objective manifestations of problems or injury caused by the
district's actions.

Plaintiff fails to present any evidence of injury caused by
his emergency expulsion reduced to a partial day suspension.
It is clear as a matter of law that the district had the authority
to expel AH on an emergency basis and then suspend him.  *See e.g.*,
*Jachetta v. Warden Joint Consolidated Sch. Dist.*, 142 Wn. App.
819, 826-827 (2008). On this record, assuming as the Court must,
that plaintiff's facts are correct, he presents no basis on which
a trier of fact could find in his favor.  Plaintiff seeks redress
for two perceived wrongs by defendants: violation of his
procedural due process rights arising from the disciplinary
procedures and measures imposed, and negligent playground
supervision allegedly resulting in injury to AH.

Based on the material facts in the record, plaintiff is not
able to establish his constitutional or negligence claims.  It is
therefore ordered that defendants' motion for summary judgment be
granted and that judgment be entered, as a matter of law, in favor
of defendants and against plaintiff on plaintiff's claims of
constitutional violations and negligence.

V.    Conclusion

For the reasons discussed above, the defendants' motion for
summary judgment (Ct. Rec. 15) is GRANTED.  Plaintiff's complaint
is dismissed with prejudice.

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 13

**IT IS ORDERED:**

1. Defendants' motion for summary judgment (**Ct. Rec. 15**) is **GRANTED**.

2. Plaintiff's complaint is dismissed with prejudice.

The District Court Executive is directed to enter this Order and to forward copies to the parties.

DATED this 13th day of February, 2009.


                                    *S/James P. Hutton*
                              JAMES P. HUTTON
                         UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT - 14